UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MONTA Y. ANDERSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Case No.  17-CV-1542 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## ORDER

This case is before this Court for ruling on Petitioner Monta Y. Anderson's ("Petitioner") Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 ("Motion"). (D. 1). Petitioner's underlying conviction involved federal drug charges. Counsel advised him that under the statute there were several pathways which could result in him receiving a mandatory life sentence. So, Petitioner entered into a plea agreement and received an agreed-upon 20-year sentence. Petitioner now seeks federal habeas corpus relief under 28 U.S.C. § 2255. He argues his plea was not knowing and voluntary because he received ineffective assistance of counsel due to her failure to investigate the factual and legal bases for applying the death results enhancement to his sentence, and but for this failure, he would not have pled guilty. Following this Court's careful consideration of the Government's Response, evidentiary hearing testimony, and post-hearing briefs, Petitioner's Motion is DENIED.

## BACKGROUND

Petitioner was charged in May 2013 for his role in a heroin distribution conspiracy involving more than 1,000 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The indictment further alleged heroin distributed by Petitioner in furtherance of the

conspiracy resulted in death and serious bodily injury – specifically, the death of James Reader and serious bodily injury because of the heroin overdoses of Haley Heilman and William Holmes.

Petitioner's revised presentence report ("PSR") indicates he was the primary supplier to Anthony Mansini. Reader died after using heroin purchased from Mansini, who bought the heroin from Petitioner.[1] Heilman overdosed on heroin twice in October 2012. Her first overdose was from heroin from Mansini, which he had purchased from Petitioner. Her second overdose was on heroin purchased directed from Petitioner. Both times Heilman was taken to the hospital, treated with Narcan, and released after several hours. Holmes also overdosed on heroin he purchased from Mansini, who again sourced his heroin from Petitioner. The PSR reports that Holmes stopped breathing and turned blue before a friend performed CPR and Holmes regained consciousness.

In June 2013, the government filed a notice under 21 U.S.C. § 851 listing three predicate offenses: a 2006 Lake County, Illinois conviction for possession of a controlled substance; a 2009 Lake County, Illinois conviction for attempted possession of a controlled substance; and a 2013 Peoria County, Illinois conviction for distribution of a controlled substance.

Due to the potential death and serious bodily injury enhancements and prior felony drug offense enhancements, Petitioner faced significant sentencing exposure. At the time, the statutory minimum if convicted under § 841(a)(1) was 10 years. 21 U.S.C. § 841(b)(1)(A). But under the statute the government could enhance Petitioner's sentence to a mandatory life sentence if they were able to prove: (1) at least two of Petitioner's prior convictions were "felony drug offenses"; (2) one of Petitioner's prior convictions was a "felony drug offense" and death resulted from the heroin distributed by Petitioner; or (3) one of Petitioner's prior convictions was a "felony drug

---

[1] There are inconsistent statements from Mansini regarding the source of the heroin he sold to Reader. During an interview on 12/13/12 Mansini stated he was not 100% sure who he received the heroin from but said more than likely he received it from Petitioner. When Mansini later testified before a grand jury, he definitively stated the heroin he sold to Reader was from Petitioner.

2

offense" and serious bodily injury resulted from the heroin distributed by Petitioner. *See id.* The government could also enhance Petitioner's sentence to a mandatory minimum of 20 years up to a maximum life sentence if: (1) Petitioner had one prior "felony drug offense"; (2) death resulted from the heroin distributed by Petitioner; or (3) serious bodily injury resulted from the heroin distributed by Petitioner. *Id.* Accordingly, there were multiple viable avenues for the government to enhance Petitioner's sentence to either a mandatory life sentence, or a mandatory minimum of twenty years and up to life sentence.

To avoid a potential life sentence, Petitioner reached an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) with the government to plead guilty and accept a sentence of 20 years' imprisonment ("C-agreement"). Pursuant to the deal, Petitioner stipulated that the government would be able to prove that as an overt act of the conspiracy, Petitioner provided the heroin that led to the death of James Reader and the overdoses of Haley Heilman and William Holmes which resulted in serious bodily injury.

At the change-of-plea hearing in February 2015, this Court confirmed with Petitioner that the basis for his plea was that he was avoiding additional statutory sentencing enhancements by accepting the deal. Specifically, the Court asked Petitioner if he had any prior felony drug convictions, and Petitioner responded affirmatively. The Court confirmed Petitioner understood without the C-agreement he would face a mandatory minimum sentence of 20 years, maximum life, fine of up to $8,000,000, special assessment of $100, mandatory supervised release term of ten years up to life for one prior felony drug offense and a mandatory life sentence if he had two or more prior felony drug offenses. Regarding the death enhancement, Petitioner stated he might have defenses to causation of Reader's death, but for purposes of the C-agreement would not challenge it. This Court confirmed Petitioner understood he was waiving his right to challenge his

conviction and sentence, except as to ineffective assistance of counsel. At the end of the hearing, this Court referred the case to Probation for a written presentence investigation report, without accepting or denying the 20-year C-agreement.

A sentencing hearing was held on October 27, 2015. Petitioner's attorney again informed the Court that if the case went to trial there would be a causation issue relating to Reader's death due to drugs from independent sources in Reader's system and mixed testimony as to whether the heroin Reader took came from Petitioner. Petitioner again told the Court that he was aware of issues relating to the death enhancement, but that he did not want to disrupt the C-agreement. This Court ultimately accepted the C-agreement, and Petitioner was sentenced to 223 months, which reflected a credit for 17 months already served in a related sentence imposed in Peoria County Case No. 12-CF-1116, to be followed by ten years supervised release.

On November 16, 2015, Petitioner sent a letter to this Court asserting he received ineffective assistance of counsel in connection with his guilty plea and requested a notice of appeal to be filed on his behalf. After this Court directed the Clerk to file Petitioner's letter as a Notice of Appeal, Petitioner's counsel filed another Notice of Appeal and moved to dismiss Petitioner's first *pro se* appeal, which was granted. Petitioner's counsel then filed an *Anders* brief and moved to withdraw. The Seventh Circuit granted the motion to withdraw and dismissed the second appeal, noting Anderson's broad waiver of appellate rights foreclosed appeal unless his plea was invalid. *United States v. Anderson,* 650 Fed. App'x 274 (7th Cir. May 24, 2016). While this direct appeal was pending, Petitioner filed a Motion to Withdraw Guilty Plea which was denied for lack of subject matter jurisdiction, and the Seventh Circuit affirmed. *United States v. Anderson,* 670 Fed. App'x 407 (7th Cir. November 9, 2016).

4

On November 9, 2017, Petitioner filed a Motion for Extension of time to File Memorandum of Law in Support of § 2255 Motion. (D. 1). Seven months later Petitioner supplemented his initial motion with a substantive argument, claiming his plea was not knowing and voluntary because he received ineffective assistance of counsel and but for her errors, he would not have pled guilty. (D. 10). In his Motion, Petitioner set forth the following specific facts in support of his claim:

i.   My distribution of heroin case was subject to a mandatory minimum of 20 years if the government could prove beyond a reasonable doubt that the heroin I provided resulted in the death of James Reader.

ii.  My attorney received approximately 1,400 pages of discovery, including detailed medical reports and toxicology reports regarding the death of Reader. Despite this detailed evidence, she spent very little time visiting me.

iii. She did not adequately discuss the "but-for" causation standard set forth in *Burrage v. United States,* 134 S. Ct. 881.

iv.  She did not review James Readers toxicology reports with me. If she had performed a proper review of the reports she would have realized they indicated that this system metabolized morphine, which was still present from his previous heroin use the day of his death. This meant the government could not have proven "but-for" causation.

*Id.* at p. 10. Petitioner attached a memorandum of law in support of his arguments. The government read Petitioner's Motion as an argument that Petitioner's attorney, if effective, would have investigated Mr. Reader's death and that the theorized result of that investigation would have prevented him from pleading guilty. (D. 16, p. 5). This Court denied Petitioner's § 2255 Motion without an evidentiary hearing, holding the record showed Petitioner's guilty plea was knowing and voluntary and that his attorney was effective in plea negotiations. Petitioner appealed and the Seventh Circuit entered an Order vacating this Court's decision and remanding the case with instructions to conduct an evidentiary hearing.

An evidentiary hearing was held on March 14, 2022. Dr. Steven Akes testified as a medical expert regarding causation of James Reader's death and Petitioner's attorney testified regarding

her representation of Petitioner. Following the hearing, both parties submitted briefs on Petitioner's prior felony drug convictions (D. 55) (D. 57), and Proposed Findings of Fact and Law (D. 56) (D. 58). This Order follows.

## STANDARD OF REVIEW

Section 2255 provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the basis that his sentence was imposed "in violation of the Constitution or laws of the United States . . ." 28 U.S.C. § 2255(a). If a petitioner successfully asserts a violation, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." § 2255(b). This is an extraordinary remedy because a petitioner seeking § 2255 relief has already "had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

Post-conviction relief under § 2255 "is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotations and citation omitted). In deciding a § 2255 motion for post-conviction relief, "evidence and inferences drawn from it are viewed in a light most favorable to the government." *United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000).

## DISCUSSION

This case calls for a straightforward application of ineffective assistance of counsel precedents, beginning with *Strickland v. Washington,* 466 U.S. 668 (1984). *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense" entails that defendant are entitled

to be represented by an attorney who meets at least a minimal standard of competence. *Id.* at 685-87. A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper,* 566 U.S. 156, 162 (2012). To succeed on a claim of ineffective assistance of counsel in negotiating the plea agreement, a defendant must show: (1) that his counsel's performance was deficient; and (2) that he was prejudiced by the deficiencies in his counsel's performance. *Strickland,* 466 U.S. at 687; *see also Hill v. Lockhart,* 474 U.S. 52, 57 (1985). Because the Strickland test requires both deficient performance and prejudice, an ineffective assistance of counsel claim can fail for lack of prejudice "without ever considering the question of counsel's actual performance," and vice versa. *United States v. Taylor*, 569 F.3d 742, 748 (7th Cir. 2009).

### A. Performance.

The performance prong of *Strickland* requires Petitioner to show "that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. During plea negotiations, "reasonably competent counsel will 'attempt to learn all facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty.'" *Gaylord v. United States,* 829 F.3d 500 (7th Cir. 2016) (quoting *Moore v. Bryant,* 348 F.3d 238, 241 (7th Cir. 2003)).

This Court's "scrutiny of an attorney's performance is 'highly deferential' to eliminate as much as possible the distorting effects of hindsight, and we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Vinyard v. United States,* 804 F.3d 1218, 1225 (7th Cir. 2015) (quoting *Strickland*, 466 U.S. at 689); *see also United States v. Cieslowski,* 410 F.3d 353, 360 (7th Cir. 2005) ("Generally when an attorney articulates a strategic reason for a decision, the court defers to that choice."). "If an attorney's decision was sound at the time it was made, the decision cannot support a claim of ineffective

assistance of counsel." *Cieslowski,* 410 F.3d at 360. However, if counsel's strategic choices are based on a misunderstanding of the law or fact, that can amount to ineffective assistance of counsel. *Vinyard,* 804 F.3d at 1225. To determine whether counsel's assistance was reasonable, the court must consider all the circumstances. *Strickland,* 466 U.S. at 688.

To assess counsel's performance, we must consider the options available to Petitioner when he pled guilty and was sentenced. The record shows during plea negotiations there were two choices. Petitioner's attorney could advise Petitioner to accept the government's plea offer, which did not include his prior felony drug convictions, and thereby guarantee Petitioner's sentencing exposure was limited to 20 years (given the C-agreement was accepted by the Court). Or, counsel could have advised Petitioner to challenge the death enhancement, risking losing the 20-year sentence guarantee and exposing Petitioner to a potential mandatory life sentence even if their challenge was successful.

It is clear from the record Petitioner's attorney had consulted with Petitioner about potential challenges to the death enhancement. Petitioner brought up the but-for causation standard in *Burrage* at this first meeting with his attorney, and it was a topic of discussion between Petitioner and his attorney at almost every meeting thereafter. It is also clear from Petitioner's testimony at the change-of-plea hearing and sentencing hearing that he understood he had a defense to the death results enhancement, but that he was willing to waive any challenge to that in exchange for the 20-year sentence guaranteed by the C-agreement.

The decision to accept the C-agreement, with the death and seriously bodily injury enhancement included, was a strategic choice. Petitioner could have challenged the death enhancement, but there was no guarantee that the government would not have withdrawn their plea offer. If Petitioner lost his challenge to the death enhancement, he was facing a minimum of

20-years, maximum life sentence, based on that sentencing enhancement alone. If he lost and had one prior felony drug offense conviction, he faced a mandatory life sentence. If he won, but the government established either of Heilman's overdoses or the Holmes' overdose resulted in serious bodily injury, he faced a mandatory minimum of 20-years' imprisonment and up to a maximum of life. If he won, but the government proved serious bodily injury and one prior felony drug offense, he faced a mandatory life sentence. If he won and had two prior felony drug offense convictions, he faced a mandatory life sentence.

Petitioner's § 2255 Motion raises challenges to ineffective assistance of counsel regarding the death enhancement but is silent as to the "serious bodily injury" enhancement that is also part of his guilty plea. While the "substantial bodily injury" enhancement is not challenged, the Court finds those overdoses relevant to the extent they influenced counsel's decision to encourage Petitioner to accept the C-agreement. Under *Strickland,*

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

466 U.S. at 690-91. The records show the overdoses of Holmes and Williams from heroin supplied by Petitioner were going to be used by the government to seek a "serious bodily injury" enhancement. Both Holmes and Williams were treated following their overdoses and recovered. Petitioner's attorney did not believe the government had a strong argument on these enhancements because both individuals had recovered. However, due to the case law not being as well developed at the time, she could not say with certainty that the government would not succeed on their argument that the enhancement should apply.

9

More importantly, to accurately estimate Petitioner's potential sentencing exposure his counsel would have had to verify whether any of his prior drug convictions were predicates. Petitioner's attorney's investigation into Petitioner's criminal history included reviewing with Petitioner a sheet from Probation with all of Petitioner's prior convictions and the criminal history included in the discovery received from the government. Petitioner's attorney testified she would conduct an external investigation if Petitioner had any concerns, was unrepresented in a prior case, or if there were discrepancies in those documents. There is no evidence any such external investigation was or was not conducted here.

Post-evidentiary hearing briefs filed by both parties stipulate that the 2009 Lake County, Illinois conviction listed in the information was not a "felony drug offense" that would have enhanced Petitioner's sentence under § 841. Whether Petitioner or his attorney were aware of this at the time he entered into the plea agreement is unknown. Issues regarding whether the 2006 Lake County conviction and the 2013 Peoria County conviction were predicate drug offense were also raised by Petitioner. Again, the Court does not know if these issues were considered by Petitioner and his counsel when they decided to accept the guilty plea.

Under the circumstances of this case a cursory investigation into, at a minimum, the three above convictions that were identified in the § 851 information filed by the government weighs heavily on the reasonableness of Petitioner's attorney's advice to forego an investigation into the applicability of the death enhancement and secure the guaranteed 20-year sentence offered by the C-agreement. Without prior predicate offenses, Petitioner had at least a chance of avoiding a mandatory minimum sentence if he also successfully challenged the death and serious bodily enhancements. Had Petitioner established his attorney failed to conduct such an investigation, this Court would find counsel's representation during plea negotiations to have been deficient. This is

especially true based on Petitioner's expert witness's testimony that the evidence was inconclusive as to which drug caused Reader's death, which does not meet the "but-for" causation standard set forth in *Burrage v. United States,* 571 U.S. 204, 218-219 (2014).

However, given the lack of evidence on this point the Court cannot conclusively determine whether counsel's performance was deficient. Further, given the lack of prejudice, as explained below, the Court need not conclusively determine whether this potential failure to investigate would qualify as deficient performance.

**B. Prejudice.**

In addition to deficient performance, Petitioner must also "show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland,* 466 U.S. at 694. To show prejudice in the plea-bargaining context, Petitioner must show that there is a reasonable probability that "the outcome of the plea process would have been different with competent advice." *Gaylord,* 829 F.3d at 506 (quoting *Lafler,* 566 U.S. at 153).

Without agreeing to the death results sentence enhancement, the record shows Petitioner's only other option was to go to trial. During plea negotiations the government was adamant that the death and serious bodily injury enhancement be included in the C-agreement. Even if Petitioner could have conclusively demonstrated that he was not the but-for cause of Reader's death, there were still multiple avenues that resulted in a mandatory life sentence, or, alternatively a 20-year mandatory minimum and up to life sentence. Petitioner has not pointed the Court toward anything in the record that suggests a more favorable plea agreement could have been possible.

Petitioner's attorney testified there was ample evidence to suggest Petitioner distributed more than 1,000 grams of heroin and that he would have lost on the drug distribution charge at

trial. He then would have still been subject to, at a minimum, a 20-year mandatory minimum and up to a maximum life sentence based on his 2006 Lake County, Illinois conviction for possession of a controlled substance. Petitioner argues for the first time in his post-evidentiary hearing brief that his counsel should have argued his 2006 conviction was not a predicate felony drug offense that triggers a sentence enhancement under § 841(b)(1)(A), because Illinois' definition of cocaine was broader than the federal definition, relying on *United States v. Ruth,* 966 F.3d 642, 650 (7th Cir. 2020).

Specifically, Petitioner argues that in 2006, Illinois' schedule of controlled substances defined "cocaine" to include "optical, positional, and geometric isomers," 720 Ill. Comp. Stat. 570/206(b)(4) (eff. 2000), and under federal law "cocaine" is defined to include "optical and geometric isomers." 21 U.S.C. § 802(17)(D). Therefore, based on *Ruth,* because the Illinois statute is categorically broader than the federal definition, Petitioner's conviction under 720 ILCS 570/402 is not a felony drug offense that could trigger a sentencing enhancement under § 841(b)(1)(A).

Petitioner's argument fails for several reasons. First, Petitioner appears to be raising a new claim for ineffective assistance of counsel based on counsel's failure to challenge his prior felony drug convictions, in his post-evidentiary hearing brief. This argument was not raised in his § 2255 Motion and the government has not had an opportunity to respond to it. Second, for purposes of "prejudice," Petitioner is essentially claiming his attorney should have raised an argument based on case law that was decided five years after he entered his guilty plea. At the time Petitioner was sentenced, no case law held that any state defined isomers more broadly than the federal government. *See Harris v. United States,* 13 F.4th 623, 630 (7th Cir. 2021).  While theoretically

the option to raise this challenge was available,[2] Petitioner's counsel had no existing precedent to rely on in support of this challenge. *See id.* at 630-31.

In *Harris*, the Seventh Circuit addressed a similar challenge regarding a petitioner seeking relief under § 2255 claiming counsel was ineffective by not challenging whether Indiana cocaine convictions were predicate felony drug convictions. The petitioner was charged with possession with intent to distribute more than 50 grams of cocaine and due to two prior Indiana cocaine convictions, the government could attempt to enhance his sentence by arguing that his prior convictions were felony drug convictions. One prior felony would have subjected him to a 20-year mandatory minimum while two offenses required a life sentence. The petitioner reached an agreement to plead guilty and accept a binding C-agreement with a 20-year sentence, with the government only listing one predicate offense. *Id*. However, soon after judgment, the Seventh Circuit held that a different Indiana drug crime was not a felony drug offense and then also decided the *Ruth* case that an Illinois conviction for possession with intent to deliver cocaine was not a felony drug offense because Illinois's definition of cocaine—like Indiana's—was broader than federal law. *Id*. (citing *United States v. De LaTorre*, 940 F.3d 938, 952 (7th Cir. 2019)); *Ruth*, 966 F.3d at 650. The Seventh Circuit ultimately held that it was reasonable for Counsel to accept a "bird in the hand" with a set 20-year sentence rather than pursue the possibility of "two in the bush" of a novel challenge to the predicate offenses and risk life in prison. *Id.* at 631.

Furthermore, Petitioner's Motion only alleges deficient performance relating to the application of the death result enhancement but is silent regarding the serious bodily injury enhancement. The C-agreement states:

---

[2] "The 'basis and authority' for *Ruth* were in place since 1990, when the Supreme Court first laid out the categorical approach in *Taylor v. United States*, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and when the relevant portions of the Illinois and federal drug statutes had taken their current form. The enterprising defendant in *Ruth* only recently seized upon it." *White v. United States*, 8 F.4th 547, 556 (7th Cir. 2021).

13

> 7 A. The parties agree and stipulate that pursuant to Title 21, United States Code Section 841(b)(1)(A), because death *and serious bodily injury* resulted from the use of heroin distributed by the defendant as an overt act of this conspiracy, this count carries a mandatory minimum sentence of 20 years imprisonment and a maximum sentence of life imprisonment.
>
> ….
>
> 22. The [Petitioner] will plead guilty to the indictment because the [Petitioner] is in fact guilty of the charge contained in the Indictment. In pleading guilty to that charge, the [Petitioner] stipulates to and admits to the following facts:
>
>> During the time period alleged in the Indictment, the [Petitioner] conspired and agreed with others to distribute heroin in Tazewell and Peoria Counties, within the Central District of Illinois, and elsewhere. In furtherance of the conspiracy, the defendant and others traveled to the Central District to bring heroin for the purpose of distribution, possessed heroin for the purpose of the distribution and distributed heroin. The government will prove that as an overt act of this conspiracy the [Petitioner] provided the heroin that led [*sic*] to the death of James *Reader and the seriously bodily injury suffered by as a result of heroin overdose of Haley Heilman and William Holmes.*

(Cr. D. 81, ¶¶ 7 A, 22) (emphasis added).[3]  Therefore, even if Petitioner was successful in establishing deficient performance of counsel relating to the death enhancement, he has put forth no argument that the "serious bodily injury" enhancements for Heilman and, or Holmes' overdoses would not apply.

As a result, this Court finds Petitioner was not prejudiced by entering into a plea agreement that capped his sentence at twenty years. Without agreeing to include the death and serious bodily injury enhancement in the plea agreement, Petitioner's only other option was to go to trial which potentially exposed him to a 20-year mandatory minimum and up to a mandatory life sentence, under several different scenarios.

## CERTIFICATE OF APPEALABILITY

If Petitioner seeks to appeal this decision, he must first obtain a certificate of appealability.

---

[3] Citations to Case No. 13-CR-10064's docket, are abbreviated as "Cr. D. ___."

*See* 28 U.S.C. § 2253(c). A certificate of appealability may issue only after Petitioner has made a "substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the Court is hesitant to preclude an appeal regarding whether Petitioner was prejudiced by his counsel's failure to investigate the factual and legal basis for applying the death results enhancement of § 841(b)(1)(A) to his sentence. Petitioner may be able to show that a "reasonable jurist" would find this Court's assessment "debatable or wrong." *See Slack,* 529 U.S. at 484. Accordingly, the Court grants a certificate of appealability on the issue of prejudice.

## CONCLUSION

For the reasons stated above, Petitioner's [1] Motion to Vacate, Set Aside, or Correct Sentence under § 2255 is DENIED. The Court GRANTS a Certificate of Appealability on the issues of whether Petitioner was prejudiced. This case is CLOSED. The Clerk is DIRECTED to prepare the Judgment.

ENTERED this 25th day of July, 2022.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
